## MARY RAFFIO, PLAINTIFF-RESPONDENT, v. EUGENE RAFFIO, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 14, 1952—Decided April 17, 1952.

Before Judges McGeehan, Jayne, and Goldmann.

*Mr. Mortimer L. Mahler* argued the cause for appellant.

*Mr. J. Mortimer Rubenstein* argued the cause for respondent.

The opinion of the court was delivered by

Jayne, J. A. D.  On July 5, 1941, the plaintiff, a widow now three score years of age having a daughter born of her former wedlock, married the defendant, who is now 56 years old.  The bride possessed an abode which she had inherited from her former mate, and the bridegroom had been for some period an inhabitant of the dwelling in the situation of a boarder.  The demands of the daughter's occupation obliged her to withdraw from the household and to select an independent domicile in a distant city.  It is not entirely conjectural to infer from the evidence that the imminent social proprieties and the economic practicalities contributed more predominantly to the cause of the marital attachment than did the tender emotions of love.

The pecuniary donations deemed necessary to subsidize the current domestic expenses soon became a subject of discord.  The defendant initially invested the weekly sum of from $12 to $15 for the contents of the larder.  In 1944, through the persuasive intervention of her counsel, the plaintiff induced the defendant to spare $30 a week.  In 1948 illness besieged the wife, and the same legal diplomatist persuaded the defendant to squeeze out of his income or personal resources a weekly allowance of $45 to meet the increasing cost of living and the supplementary expenses occasioned by the illness of the wife.

Recognizing that these periodical incursions upon his purse were becoming progressively more devastating, he resolved that he "would fain die a dry death," and on October 6,

1948, he decamped. He moved into an apartment consisting of three bedrooms, a bathroom, dining room, and kitchen, which he had leased two weeks previously. He took with him his desk, radio, and a vacuum cleaner, which were the removable chattels that he had supplied to the accommodations of the former dwelling. More preeminently, he thereupon discontinued his endowments for the support of his wife.

On December 6, 1948, the plaintiff instituted and thereafter prosecuted the present action against him alleging that without justifiable cause he abandoned and separated himself from her and has since refused or neglected to maintain and provide for her. *R. S.* 2 :50–39. The advisory master upon a very deliberate consideration of the evidence concluded that the alleged cause of action of the plaintiff was adequately sustained by the credible evidence, and he authorized the entry of a judgment directing the defendant to pay to the plaintiff the sum of $30 on Monday of each week for her support and maintenance, together with the allowance of a counsel fee of $300.

We are requested to examine the legal and factual propriety of the judgment. The only point of a legalistic complexion is that there was an absence of testimony corroborative of that of the plaintiff.

It is to be at once recognized that in a maintenance action, as distinguished from one for divorce, corroboration of the plaintiff's testimony is not necessary, and the relief can be granted on the testimony of the plaintiff alone where it is deemed credible and adequate. *Pinkinson v. Pinkinson,* 92 *N. J. Eq.* 669, 671 (*E. & A.* 1921) ; *Shore v. Shore,* 96 *N. J. Eq.* 661, 667 (*E. & A.* 1924) ; *Gerhold v. Gerhold,* 109 *N. J. Eq.* 634 (*E. & A.* 1932) ; *Zehrer v. Zehrer,* 5 *N. J.* 53, 61 (1950). We observe, however, that the testimony of the plaintiff's daughter possesses some corroborative characteristics.

The only other essential element of the plaintiff's alleged cause of action the proof of which is claimed by the

defendant to be insufficient is that the defendant abandoned and separated from his wife without justifiable cause. The defendant does not even intimate that the cause of his acknowledged separation was one of the quality to warrant a dissolution of the marriage. *Vide, Dinnebeil v. Dinnebeil,* 109 *N. J. Eq.* 594 (*E. & A.* 1932).

The controversial jars which ultimately caused the separation of the parties were in the category of domestic economy. Money disputes. The defendant testified that on more than one hundred occasions when they were out of tune the plaintiff recommended that he leave the home and that his eventual departure, although not in pursuance of a contractual bargain, was nevertheless in harmony with her expressed wishes. *Cf. Biddle v. Biddle,* 104 *N. J. Eq.* 313 (*Ch.* 1929); *Patton v. Patton,* 58 *A.* 1019 (*Ch.* 1904). The plaintiff at the trial both affirmed and denied the utterance of such statements. The transcripts of evidence which currently flow before us in matrimonial causes conspicuously exhibit the rash, uncalculating, and impulsive expressions and epithets hurled at random by one spouse at the other during the belligerency of a marital fracas.

A significant feature of this case is that although declaring that he invited his wife to join him in the occupancy of the apartment, the defendant acknowledged that he had never until the date of the trial informed his wife of the address.

The advisory master, whose decisional ability in such cases is seasoned with appropriate experience and who was afforded the superior advantage of observing the witnesses, of testing the credibility and sincerity of their testimony and determining the truth, reached the conviction that the defendant in the circumstances abandoned his wife without justifiable cause. It is not made manifest to us that he arrived at an erroneous conclusion.

[3] But there is more enveloped in the present appeal. The defendant impugns the fairness of the allowances made

by the advisory master for the support and maintenance of the wife and for the compensation of her counsel.

We discover in the uncontroverted evidence submitted to us that the defendant possesses United States Savings Bonds of the maturity value of $12,500; savings accounts in three banks aggregating a credit of approximately $7,800; 350 shares of Packard Motor Car Company, 150 shares of Curtiss Wright Corporation, and 100 shares of Ford Motor of France Corporation, and that his net earnings are in excess of $60 a week. Certainly the allowances fixed by the advisory master for support and counsel fee are not conspicuously exorbitant.

The judgment is affirmed.